Jeremy C. Lieb
Ian S. Dooley
Erik Grafe
EARTHJUSTICE
441 W 5th Avenue, Suite 301
Anchorage, AK 99501
T: 907.277.2500
E: jlieb@earthjustice.org
E: idooley@earthjustice.org
E: egrafe@earthjustice.org

Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: ejorgensen@earthjustice.org

*Attorneys for Plaintiffs National Audubon Society et al.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NATIONAL AUDUBON SOCIETY *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEB HAALAND, in her official capacity as Secretary of the Interior, *et al.*, <br><br> *Defendants*, <br><br> and <br><br> STATE OF ALASKA, <br><br> *Intervenor-Defendant.* | Case No. 3:20-cv-00206-SLG |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

    I.     Plaintiffs' claims are not moot. ............................................................................... 4

    II.    Plaintiffs have adequately alleged standing. ........................................................... 8

    III.   Alaska's additional arguments are without merit. ................................................. 13

CONCLUSION ..................................................................................................................... 15

CERTIFICATE OF COMPLIANCE WITH WORD LIMITS ........................................... 16

# INTRODUCTION

Plaintiffs hereby oppose the Department of the Interior (Interior) and State of Alaska's (Alaska) motions to dismiss. Docs. 65 & 66. Contrary to their arguments, the Court has jurisdiction to adjudicate Plaintiffs' challenge.

When Plaintiffs initiated their lawsuit, Interior's environmental impact statement (EIS) for its Integrated Activity Plan purported to fulfill National Environmental Policy Act (NEPA) requirements for future lease sales. Doc. 63 at 2, ¶2. Plaintiffs' lawsuit challenges its adequacy for that purpose. Doc. 1 at 21, ¶¶55-58; Doc. 24 at 31-36, ¶¶90-105. Over two years into the litigation, Interior placed a statement, termed an errata, on its website, reversing its position and stating that the EIS does not purport to fulfill NEPA requirements for future lease sales. Doc. 63 at 3-4, ¶7; *id.* at 18, ¶63. In now arguing that because of this errata statement, Plaintiffs' claims are not ripe, Interior ignores this basic litigation history and asks the Court to apply the wrong doctrine to assess whether it retains jurisdiction over this case. Doc. 65 at 8-11; *see also* Doc. 66 at 11-13 (Alaska's motion, making same argument). At this stage of the litigation, the doctrine of mootness governs whether the Court retains jurisdiction over Plaintiffs' challenge. The question is not whether Plaintiffs could establish ripeness or standing were they to initiate their lawsuit anew today, but rather whether Interior has demonstrated that the challenged conduct it has voluntarily ceased during the pendency of the litigation cannot reasonably be expected to start up again. Interior has failed to meet this heavy burden.

Alaska's additional arguments fare no better. Plaintiffs have adequately pled

associational and organizational standing; whether Interior complied with NEPA for its 2022 decision to re-adopt the 2013 land management plan is beside the point, because Plaintiffs challenge a different action—Interior's conclusion that the 2020 EIS covers future lease sales; and the statute of limitations does not bar Plaintiffs' claims.

## BACKGROUND

This action arises from the Bureau of Land Management's (BLM) June 2020 final EIS for the National Petroleum Reserve-Alaska (Reserve) Integrated Activity Plan. Specifically, BLM asserted that the EIS satisfied NEPA for future lease sales. Doc. 1 at 20, ¶54. Plaintiffs challenged the adequacy of the EIS for this purpose. *Id.* at 21, ¶¶55-58; Doc. 24 at 31-36, ¶¶90-105.[1]

The Ninth Circuit has held that where Interior defines the scope of an EIS to encompass future lease sales in the Reserve, parties must challenge the adequacy of the EIS's analysis of future lease sales within 60 days after publication of the notice of availability of the EIS in the Federal Register. *N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, 983 F.3d 1077, 1086, 1092-96 (9th Cir. 2020) (construing 42 U.S.C. § 6506a(n)(1)). Accordingly, on August 24, 2020, Plaintiffs challenged the adequacy of the 2020 EIS for future lease sales within that timeframe, even though BLM had not yet proposed or planned any lease sales.

---

[1] Plaintiffs' original and first amended complaints also challenged BLM's adoption of the Integrated Activity Plan. They have dropped this part of their challenge in their second amended complaint, now challenging only the EIS and its adequacy for future lease sales and the 2022 record of decision (ROD), but only to the extent it adopts the EIS's analysis for future sales.

On September 20, 2022, two years into this litigation, Interior posted on one of its websites a document titled "Errata Sheet." The document purported to reverse what the 2020 EIS says about its scope. Joint Mot. to Dismiss under FRCP 41(a)(2) (Unopposed), Attach. No. 1, Errata to 2020 FEIS, *N. Alaska Env't Ctr. v. Haaland,* No. 3:20-cv-00207-SLG (D. Alaska Sept. 21, 2022) (Doc. 53-1). The original 2020 EIS that Plaintiffs challenged stated that the final EIS "*is* intended to fulfill NEPA requirements for lease sales conducted at least through December 2039 and potentially thereafter." Doc. 1 at 20, ¶24 (emphasis supplied). The Errata Sheet stated, "[t]his programmatic IAP/EIS *is not* intended to, by itself and without further NEPA analysis, fulfill NEPA requirements for future lease sales." Joint Mot. to Dismiss under FRCP 41(a)(2) (Unopposed), Attach. No. 1, Errata to 2020 FEIS at 2, *N. Alaska Env't Ctr. v. Haaland,* No. 3:20-cv-00207-SLG (D. Alaska Sept. 21, 2022) (Doc. 53-1) (emphasis supplied). By issuing the Errata Sheet, Interior purported to cease the conduct Plaintiffs were challenging.

Interior's process for the Errata Sheet consisted of creating the document and posting it to one of its websites associated with the record for the 2020 EIS. It did not amend the actual text within the 2020 EIS. Interior did not undertake any public notice or comment process in connection with the Errata Sheet or provide any explanation for its reversal of position.

# ARGUMENT

## I. Plaintiffs' claims are not moot.

Interior and Alaska are wrong that the Court should analyze its continuing jurisdiction through the doctrine of standing and ripeness. Doc. 65 at 8-11; Doc. 66 at 11-13. When an intervening event potentially eliminates a controversy, the appropriate analytical framework for evaluating the Court's jurisdiction is mootness, not standing or ripeness. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-191 (2000) (reversing court of appeals where it "confused mootness with standing"); *see also Sackett v. U.S. Env't Prot. Agency*, 8 F.4th 1075, 1084 (9th Cir. 2021), *cert. granted in part sub nom.*, 142 S. Ct. 896 (2022) (noting that "whether a suit may be initiated and whether it may be terminated as moot are different inquiries").

Indeed, it is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth*, 528 U.S. at 189 (internal citation omitted). Thus, the test for determining whether a case has been mooted by defendants' voluntary conduct "is stringent": the defendant bears a "heavy burden" to show that "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal citations omitted)*; see also*. *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (noting that "[t]he distinction [between mootness and standing] matters because the [defendant], not petitioners, bears the burden to establish that a once-live case has become moot") (internal citations omitted). "[A]lthough courts 'presume that a

government entity is acting in good faith when it changes its policy, . . . when the Government asserts mootness based on such a change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again.'" *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152-54 (9th Cir. 2019) (quoting *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014)). In treating the question as one of ripeness and standing, Interior has failed to recognize this burden, let alone explain how it is met here.

The government's action here does not meet the demanding mootness test. To moot a case, the change in government behavior must be "entrenched" or "permanent." *See Fikre v. FBI,* 904 F.3d 1033, 1037 (9th Cir. 2018); *id.* at 1039 ("Our case law teaches that a voluntary change in official stance or behavior moots an action only when it is 'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur.") (internal citation omitted). There is nothing about Interior's change of position that prevents it from reversing again. Interior changed its position by publishing a two-page errata in a "documents" tab on its ePlanning website. *See* Doc. 61 at 2 (describing errata and linking to website). The errata purports to replace statements in the 2020 EIS that the document fulfilled NEPA requirements for future lease sales with statements that it does not. Other than posting the document on its website and describing it in a status report filed with the Court, Doc. 61, Interior did not publicize the change. It did not undertake any public process in

connection with its change in position. It did not describe the reason for its change in position. Nothing precludes Interior from reversing course by, for example, posting a new Errata Sheet revising the EIS to cover lease sales again. If Interior followed the same process as it did for its first Errata Sheet, the public might not even know that the agency had changed position again.

The impermanence of the government's change of behavior places it squarely on the side of actions that the Ninth Circuit has concluded do not render a case moot. It is similar to the FBI's decision to remove a person from the no-fly list in *Fikre*, 904 F.3d at 1037, and the police chief's decision not to prosecute certain violators of a city ordinance in *Bell v. City of Boise*, 709 F.3d 890, 900-01 (9th Cir. 2013). The Ninth Circuit determined that these changes did not moot the challenges at issue, focusing on the lack of explanation for the changes and the lack of any procedural barriers inhibiting their future reversal. *See Fikre*, 904 F.3d at 1039-40; *Bell*, 709 F.3d at 900-01. Similarly, in *Sacket v. Environmental Protection* Agency, the Ninth Circuit concluded that the agency's decision to withdraw a compliance order did not moot the case, where the "EPA could potentially change positions under new leadership." 8 F.4th at 1083. So too, here.

In contrast, the Ninth Circuit has determined a government change in position sufficiently permanent and entrenched when "enshrined, at least in part, in a regulatory revision," *Am. Diabetes Ass'n*, 938 F.3d at 1153-54, or included in public guidance document, backed by the expiration of legislation enabling the challenged behavior and the imposition of financial penalties for resumption of the conduct, *Brach v. Newsom*,

38 F.4th 6, 12-15 (9th Cir. 2022). Interior's change of position here bears none of these hallmarks.[2]

Unlike the run-of-the-mill voluntary cessation case, in which a plaintiff could renew litigation of the challenged behavior if it reoccurs, a future reversal here would additionally harm Plaintiffs by potentially barring them from pursuing a challenge anew. As a result, it is particularly important here for the Court to settle the legality of the EIS's assessment of lease sales to avoid a substantial risk it might otherwise evade review. *See United States v. T. Grant Co.*, 345 U.S. 629, 632 (1953) (noting that a principle underlying the voluntary cessation doctrine is "the public interest in having the legality of the practices settled"). This is because the Naval Petroleum Reserves Production Act's statute of limitations, section 6506a(n)(1), bars judicial review of the EIS's adequacy for the sales unless brought within 60 days of the government's publication of a notice of availability for the EIS. The statute of limitation for challenging the EIS at issue here tolled on August 25, 2020. Notice of Availability of the National Petroleum Reserve in Alaska Integrated Activity Plan Final Environmental Impact Statement, 85 Fed. Reg.

---

[2] The government's suggestion that reversal is not likely because it has disavowed, or might disavow, the greenhouse gas emissions analysis in the EIS, Doc. 65 at 11, does not provide the certainty required to moot the case. This is particularly true where the government has continued to rely on this analysis for decisions. *See, e.g.,* BLM, Willow Master Development Plan, Final Supplemental Environmental Impact Statement at ES-1 ("The Willow [Master Development Plan] EIS tiers to the 2012 and 2020 IAP/EISs."), 405 (relying on 2020 IAP/EIS in part to support greenhouse gas emissions analysis) (Jan. 2023), https://eplanning.blm.gov/eplanning-ui/project/109410/570.

38,388 (June 26, 2020).  Were Plaintiffs' current challenge to be dismissed and Interior to change position and rely on the EIS for future lease sales, Interior would have an argument that any new challenge to the EIS's adequacy for the lease sales is time barred. Interior attempts to downplay this risk, providing several arguments one might make to challenge section 6506a(n)(1)'s application to this situation.  Doc. 65 at 11-13.  However, Interior's current litigation position—that section 6506a(n)(1) would not apply if Interior changed course in the future—is itself changeable.  Moreover, other parties might take a different view, as Alaska's motion to dismiss here, which argues section 6506a(n)(1) bars Plaintiffs' current challenge, illustrates.  Doc. 66 at 13-18.[3]  Thus the lack of any factors preventing a future simple reversal here compels, in these circumstances particularly, a conclusion that the government has not met its burden and the case is not moot.

## II.  Plaintiffs have adequately alleged standing.

Contrary to Alaska's argument, Doc. 66 at 6-10, Plaintiffs have adequately alleged they have standing.  Alaska argues that Plaintiffs' allegations of associational standing fail because (1) they do not allege that they have suffered, or will face, harm, and (2) Stand.earth's purpose of "challeng[ing] corporations and governments to treat people and

---

[3] Interior could have chosen a different course and ensured that review will be available in the future.  For example, it could commit to issuing a new notice of availability of the 2020 EIS, resetting the clock for judicial review under section 6506a(n)(1), if it were to revise the 2020 EIS in the future or rely on it as the NEPA analysis for a future lease sale. While this would not necessarily affect the mootness inquiry, since the agency could still just as easily change course again on its position that the EIS covers future lease sales, it would lessen the impact of such a reversal on Plaintiffs' ability to challenge the EIS's adequacy for future sales.

*National Audubon Society et al. v. Haaland et al.*,
Case No. 3:20-cv-00206-SLG                                                                                          8

Case 3:20-cv-00206-SLG   Document 70   Filed 03/27/23   Page 10 of 18

the environment with respect" is unrelated to holding the government accountable for following NEPA procedural requirements. *See* Doc. 66 at 7-10. As described below, Plaintiffs' second amended complaint easily meets these requirements.

To state a claim adequately, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). There must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As the Ninth Circuit has described, "the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted). In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the challenged pleading. *Iqbal*, 556 U.S. at 664. Plaintiffs have met the standard here.

Plaintiffs have adequately alleged associational standing. The three factors an association must demonstrate are: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs allege that their members would otherwise have standing to sue in their own right. Doc. 63 at 4-7; *see Hunt*, 432 U.S. at 343

(describing associational standing elements, including that members "would otherwise have standing to sue in their own right"); *see also Am. Diabetes Ass'n*, 938 F.3d at 1155. In order for an association to demonstrate one of its members would have standing to sue in their own right, the association must "show that a member suffers an injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). Plaintiffs adequately allege the three elements required to establish their members' standing.

First, Plaintiffs' complaint alleges their members will suffer "a concrete and particularized injury." *Pyramid Lake Paiute Tribe of Indians v. Nev., Dep't of Wildlife*, 724 F.3d 1181, 1187 (9th Cir. 2013). Plaintiffs allege that their members engage in subsistence activities, recreation, and wildlife viewing, among other things, in areas of the Reserve subject to future leasing, Doc. 63 at 7, ¶16, and that oil and gas leasing would harm those interests, *id.*, by, for example, causing the emission of hundreds of millions of tons of greenhouse gases, *id.* at 15, ¶45, thereby worsening the already profound effects of climate change on the Reserve, *id.* at 9-11, ¶¶28-33. These allegations make out a claim for concrete injury. *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) ("The 'injury in fact' requirement in environmental cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct.").

The allegations in Plaintiffs' complaint also address the second standing factor—a causal connection between the injury and the Defendants' challenged conduct. *Pyramid Lake Paiute Tribe of Indians*, 724 F.3d at 1187. Plaintiffs allege that BLM's decision to hold lease sales, and the exploration and development that such sales are intended to spur, would injure their members. Doc. 63 at 7, ¶16 ("Fossil fuel leasing, exploration, and development in these areas will directly and irreparably injure these interests [in subsistence activities, recreating, wildlife viewing, etc.].")

Plaintiffs also address the third standing factor: the likelihood that a favorable decision will redress their injury. *Pyramid Lake Paiute Tribe of Indians*, 724 F.3d at 1187. For example, the complaint describes that, were BLM to consider a reasonable range of alternatives for lease sale decisions, it could choose to offer fewer areas for lease, impose different conditions on leases, or choose not to offer leases at all. Doc. 63 at 14-15, ¶¶42-44. The same goes for BLM's consideration of the greenhouse gas emissions consequences of its lease sale decisions. *Id.* at 15-16, ¶¶45-47. Such a different decision could eliminate, or at least lessen, harm to Plaintiffs and their members.[4]

It is long-settled law that Plaintiffs' allegations suffice at this stage. Alaska argues

---

[4] Moreover, "[o]nce a plaintiff has established an injury-in-fact under NEPA, the causation and redressability requirements are relaxed." *Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001); *see also Chilkat Indian Vill. of Klukwan v. Bureau of Land Mgmt.*, 399 F. Supp. 3d 888, 905 (D. Alaska 2019) (plaintiffs must only demonstrate that they are "'seeking to enforce a procedural right under NEPA to protect their concrete interests'" (quoting *Cantrell*, 241 F.3d at 682)).

that because Plaintiffs have provided no declarations or provided more information about its specific members that Plaintiffs fail to demonstrate associational standing. Doc. 66 at 7-8. Alaska, however, fails to comprehend that neither is required at this stage. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim") (internal citations and quotations omitted); *see also Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (rejecting argument that a complaint did not allege standing with sufficient specificity "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action . . . ."). Plaintiffs at this stage have adequately alleged their members' standing.

To Alaska's argument that BLM's lease sale decisions are not germane to Stand.earth's purposes, it is also without merit. Doc. 66 at 9. Stand.earth's purposes include "challenging destructive . . . government policies," advocating for "the need to transition away from fossil fuels, including oil," and "protect[ing] the Arctic." Doc. 63 at 6, ¶15. The subject of this litigation—BLM's compliance with NEPA in evaluating and fully disclosing the alternatives and impacts of its decisions to sell oil and gas leases in the Reserve—is directly relevant to these purposes. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 286-87 (1986) (where union's constitution announced a goal of establishing social and unemployment

insurance funded by government and private employers, a suit challenging Department of Labor policy regarding eligibility for unemployment benefits was germane to its organizational purpose); *compare with Fleck & Assocs., Inc. v. Phoenix, City of, an Ariz. Mun. Corp.,* 471 F.3d 1100, 1106 (9th Cir. 2006) (a social club's purpose is to turn profit, which is not germane to a suit seeking to vindicate putative privacy interests of its customers).

Finally, Alaska's argument that Plaintiffs have not adequately alleged organizational standing, what Alaska terms "individual" standing, Doc. 66 at 10-11, fails for the same reason as its other argument—the complaint's allegations are sufficiently detailed at this stage of the litigation. It alleges that each of the Plaintiff groups monitors public land decisions and educates its members about them. Doc. 63 at 7, ¶17. A flawed NEPA analysis would frustrate these organizational goals and require diversion of resources. *Id.*; *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (describing factors of organizational standing) (superseded on other grounds by statute 42 U.S.C. § 3613(a)(1)(A)). Plaintiffs' organizations have adequately alleged associational and organizational standing as required at this phase of litigation.

### III. Alaska's additional arguments are without merit.

First, Alaska argues that because BLM selected the no-action alternative in the 2022 ROD, NEPA was not triggered and no environmental analysis was required. Doc. 66 at 4-6. Alaska's argument is misplaced because it focuses on a decision Plaintiffs do not challenge. Plaintiffs challenge the adequacy of the EIS for future lease sales and the

2022 ROD only to the extent it adopts the EIS for this purpose. They do not challenge the adequacy of the EIS for purposes of re-adopting the 2013 Integrated Activity Plan or the 2022 ROD adopting the new plan. *See* Doc. 63 at 19-24, ¶¶71-94 & Prayer for Relief. It is undisputed that the 2020 EIS purported to cover future lease sales and that notice of its availability was published in the Federal Register. As such, section 6506a(n)(1) compelled Plaintiffs to initiate a challenge to the EIS promptly. The Ninth Circuit has concluded that such a challenge to an EIS is appropriate, even though lease sales have not been scheduled or planned. *Nat. Res. Def. Council v. Bernhardt*, 820 Fed. App'x 520, 524-25 (9th Cir. 2020) (affirming "a NEPA challenge to an EIS is ripe when the allegedly inadequate EIS is promulgated"); *see also Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 868 (9th Cir. 2022) ("We have repeatedly held that final NEPA documents are final agency actions.").

Alaska is also wrong that the statute of limitations bars Plaintiffs' claims. Doc. 66 at 13-18. Like their argument about whether the 2022 ROD required NEPA analysis, this argument mistakes the decision Plaintiffs challenge. Plaintiffs' original complaint challenged the adequacy of the EIS for future lease sales. Doc. 1 at 20-21, ¶¶54-58. They filed their complaint within the statute of limitations window, as Alaska concedes. Doc. 66 at 14. Their subsequent complaints properly relate back to this original complaint because they "assert a claim . . . that arose out of the conduct . . . in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), namely Interior's publication of the EIS purporting to cover future lease sales (notwithstanding its non-mooting change of

position). Alaska's focus on the 2020 and 2022 RODs is misplaced; Plaintiffs do not challenge those decisions as they relate to the management plan—they challenge the EIS and its inclusion of future lease sales.[5]

## CONCLUSION

Plaintiffs respectfully ask this Court to deny Defendants' Motion to Dismiss. This Court retains the jurisdiction that it has had over the past two years of litigation. The doctrine of ripeness is inapplicable. Plaintiffs' claims are not moot, and Plaintiffs' organizations have adequately pled associational and organizational standing at this stage of pleading.

Respectfully submitted this 27th day of March, 2023.

*s/ Erik Grafe*
Erik Grafe (Alaska Bar No. 0804010)
Jeremy C. Lieb (Alaska Bar No. 1810088)
Ian S. Dooley (Alaska Bar No. 2006059)
Eric P. Jorgensen (Alaska Bar No. 8904010)
EARTHJUSTICE

*Attorneys for Plaintiffs National Audubon Society, Center for Biological Diversity, Friends of the Earth, and Stand.earth*

---

[5] Plaintiffs' second amended complaint does seek partial vacatur of the 2022 ROD, but only to the extent that it adopts the EIS's purported coverage of future lease sales. *See* Doc. 63 at 24, Prayer for Relief ¶C. Section 6506a(n)(1) does not apply to challenges to RODs—it is keyed specifically to challenges to EISs. 42 U.S.C. § 6506a(n)(1) (applying to "any action seeking judicial review of the adequacy of any program or site-specific environmental impact statement"). Thus, to the extent it is treated separately from their challenge to the adequacy of the EIS for future lease sales (filed timely within section 6506a(n)(1)'s limitation period), Plaintiffs' prayer for relief relating to this one aspect of the 2022 ROD is timely because it was brought well within the default six-year statute of limitations for challenges to administrative actions. 28 U.S.C. § 2401(a).

# CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

I certify that this document contains 4,150 words, excluding items exempted by Local Civil Rule 7.4(a)(4), and complies with the word limits of Local Civil Rule 7.4(a)(2).

Respectfully submitted this 27th day of March, 2023.

        *s/ Erik Grafe*
        Erik Grafe