TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

RICKEY D. TURNER, JR., Senior Attorney
Wildlife & Marine Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1373
rickey.turner@usdoj.gov

PAUL A. TURCKE, Trial Attorney
Natural Resources Section
c/o U.S. Attorney's Office
1290 West Myrtle Street, Suite 500
Boise, ID 83702
Tel: (202) 532-5994
paul.turcke@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NATIONAL AUDUBON SOCIETY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEB HAALAND, *et al.*, <br><br> Defendants, <br> and <br><br> STATE OF ALASKA, <br><br> Intervenor-Defendant. | Case No. 3:20-cv-00206-SLG |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

      This matter is before the Court on Defendants' motion to dismiss. Plaintiffs still

fail to explain how the Court has jurisdiction to review agency action that Plaintiffs

support solely to protect against injury that might someday occur through a hypothetical and speculative future reversal of agency position. Plaintiffs fail in their obligation to demonstrate continuing injury in fact and thus standing necessary for the Court to maintain jurisdiction and therefore the Court should dismiss this action with prejudice.

Plaintiffs fail to respond to Defendants' standing and ripeness arguments. As Defendants explained, the Court's jurisdiction extends only to live cases and controversies in which a plaintiff has suffered (or imminently will suffer) legally cognizable injury. *See* Defs.' Mot. to Dismiss 8-9, ECF No. 65 ("Defs.' Mot."). Without this foundational element a plaintiff cannot demonstrate standing. Count I of Plaintiffs' Second Amended Complaint challenges the original 2020 EIS provision that "purported to fulfill NEPA requirements for lease[ ] sales conducted at least through December 2039 and potentially thereafter." Second Am. Compl. ¶ 76. But that provision no longer exists – BLM formally changed the text of the 2020 EIS and directly responded to Plaintiffs' concerns. *See* Sept. 2022 Errata "Dear Reader" letter 1, ECF 65-2 ("The Errata Sheet provides the revised text for Section 1.8 in its entirety."). The 2020 EIS now reads "[t]his programmatic IAP/EIS is not intended to, by itself and without further NEPA analysis, fulfill NEPA requirements for future lease sales." *Id*. at 2-3. Plaintiffs cannot show, indeed do not even allege, that they have suffered injury through the Errata's modification of the 2020 EIS.[1] Additionally, Count II seeks to challenge the 2020 EIS

---

[1] Plaintiffs may be suggesting that BLM unlawfully changed the 2020 EIS through the 2022 Errata. *See* Pls.' Resp. to Mots. to Dismiss 5-6, ECF No. 70 ("Pls.' Resp.") (saying the Errata was not accompanied by "any public process" or supported by "the

*Nat'l Audubon Soc'y v. Haaland*  
REPLY IN SUPP. OF DEFS.' MOT. TO DISMISS

Case No. 3:20-cv-00206-SLG

2

Case 3:20-cv-00206-SLG   Document 71   Filed 04/25/23   Page 2 of 8

analysis of greenhouse gas emissions associated with future lease sales. *See* Second Am. Compl. ¶¶ 84-87. These claims are even more deeply flawed, for the adequacy of BLM's NEPA analysis for a future lease sale is unripe when no such sale is even under consideration and the 2020 EIS, as reflected in the Errata, explicitly states that it is not intended to fulfill NEPA requirements for future lease sales.

Rather than addressing their burden to demonstrate standing and ripeness, Plaintiffs shift the debate to mootness and contend this is a case in which Defendants shoulder the "heavy burden" to disprove that their "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *See* Pls.' Resp. 4 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). But this case seeks review of final agency action that no longer exists, not some agency "practice" that is voluntarily paused. BLM did not

---

reason for [the agency] change in position"). The "Dear Reader" letter reflects BLM's determination that the Errata did not require supplemental NEPA analysis. *See* ECF. No. 65-2 at 1 ("There are no changes or significant new circumstances or information identified in this Errata Sheet that affect the impact conclusions in the Final EIS."); *see also* 40 C.F.R. § 1502.9(d) (2021) (addressing NEPA supplementation requirements). Such a conclusion can be warranted when the changes reduced environmental impacts "because a minimizing measure's effects on the environment will usually fall within the scope of the original NEPA analysis." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008); *see also Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037, 1048 (9th Cir. 2011). In any event, Plaintiffs lack standing to challenge this determination because they were benefited, not injured, through the Errata. These factors might align differently if BLM attempted the future errata that Plaintiffs fear and tried to reinstate language saying the 2020 EIS does fulfill NEPA requirements for future lease sales. Moreover, such a future BLM determination would fall within the recognition in *N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, 983 F.3d 1077, 1096 (9th Cir. 2020), that the NPRPA limitation of actions provision would not preclude a claim alleging violation of NEPA supplementation requirements.

*Nat'l Audubon Soc'y v. Haaland*  Case No. 3:20-cv-00206-SLG
REPLY IN SUPP. OF DEFS.' MOT. TO DISMISS  3

Case 3:20-cv-00206-SLG   Document 71   Filed 04/25/23   Page 3 of 8

voluntarily cease or alter a disputed course of conduct – it changed the disputed provision of the 2020 EIS.[2] That change does not implicate the voluntary cessation doctrine because the provision in the 2020 EIS that Plaintiffs seek to challenge has been "superseded." *See Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 39 (D.D.C. 2022) (finding that the voluntary cessation doctrine does not apply when an agency issued a new action that "superseded" the challenged practice), *appeal dismissed*, No. 22-5205, 2022 WL 4086993 (D.C. Cir. Sept. 2, 2022).

Even under the "voluntary cessation" framework, Plaintiffs' argument fails. The inquiry focuses on whether a defendant can show "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth*, 528 U.S. at 190, but Ninth Circuit law attaches a presumption of good faith to governmental policy changes, *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). "No bright-line rule separates cases comprehended by the voluntary cessation doctrine from those that are not, but the government's unambiguous renunciation of its past actions can compensate for the ease with which it may relapse into them." *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018). The form of the governmental action "is critical" – a statutory change will usually render a case moot while executive action "that is not governed by any clear or codified procedures cannot moot a claim." *Id*. at 1038

---

[2] Rather than a unilateral or strategic choice as typically occurs in the voluntary cessation context, Defendants' changes to the ROD and EIS were made following conferral with Plaintiffs in this and the related case and were intended to resolve their concerns. *See* Defs.' Mot. 4-5. And this effort was successful, at least for the *Northern Alaska Center* Plaintiffs. *Id*. at 5.

| | |
|---|---|
| *Nat'l Audubon Soc'y v. Haaland*<br>REPLY IN SUPP. OF DEFS.' MOT. TO DISMISS | Case No. 3:20-cv-00206-SLG<br>4 |

(citation omitted). Between these endpoints, a court may consider various factors demonstrating:

> that mootness is more likely if (1) the policy change is evidenced by language that is broad in scope and unequivocal in tone; (2) the policy change fully addresses all of the objectionable measures that [the agency] took against the plaintiffs in the case; (3) the case in question was the catalyst for the agency's adoption of the new policy; (4) the policy has been in place for a long time when [the court] consider[s] mootness; and (5) since the policy's implementation the [agency has] not engaged in conduct similar to that challenged by the plaintiff.

*Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014) (numbering in original) (internal quotation marks, original alterations, and citation omitted); *see also Mothership Fleet Coop. v. Ross*, 426 F. Supp. 3d 611, 618-19 (D. Alaska 2019).

Application of these factors supports mootness. BLM made a formal change to the 2020 EIS that applies broadly to the entire NPR-A and any affected interests. And BLM issued a 2022 ROD that reinstated key aspects of the 2013 ROD supported by Plaintiffs. *See* Defs.' Mot. 4-5 (describing reinstatement of Colville River Special Area and restoration of Teshekpuk Lake and Utukok River Uplands Special Areas boundaries). These changes were intended to resolve the claims in this and the related case challenging the 2020 IAP and EIS. *Id*. at 5 (describing voluntary dismissal of related case). While a change made roughly six months ago may not qualify as having been in place for a long time, the agency cannot, despite Plaintiffs' fears, rescind the change or revert to the position challenged by Plaintiffs without conducting a further process leading to a new decision, which would be subject to independent judicial review once final. These circumstances place this case alongside others where a government defendant has acted

with sufficient formality and clarity to demonstrate mootness. *See*, *e.g.*, *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153–54 (9th Cir. 2019) (policy change was "enshrined" in a regulatory revision); *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (memorandum changing agency policy was "broad in scope and unequivocal in tone"); *Mothership Fleet Coop.*, 426 F. Supp. 3d at 619-21; *Sitton v. Native Vill. of Northway*, No. A03-0134-CV (HRH), 2005 WL 2704992, at *5 (D. Alaska Oct. 13, 2005) (finding it "absolutely clear" challenged assertion of jurisdiction would not recur).

Similar cases in the natural resources and land management context solidify this conclusion. *See Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997), *as amended* (Sept. 16, 1997) (finding moot a challenge to a biological opinion superseded by issuance of a new opinion); *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1095 (9th Cir. 2003) (basing mootness on an agency "clarification" of a disputed decision and clear indication that the agency "does not intend to (nor even think it could) return to the original policy"). Mootness is particularly apparent when BLM would need to "base future [leasing] decisions on a new report with different facts and analysis," namely, additional NEPA analysis. *Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1184 (9th Cir. 2023). Plaintiffs' hypothetical future reversal of position posited by BLM would demand some combination of the procedural requirements "to acquire new data, make new decisions including issuing new notice, provide opportunity for public comment, and finally issue a new decision that must comply with all applicable laws and which would be subject to challenge." *League of Wilderness Defs.-Blue Mountains Biodiversity Proj. v. Smith*, No. 04-1595 PK, 2006 WL

3692535, at *4 (D. Or. Dec. 12, 2006).

Plaintiffs' cited cases are readily distinguishable. *See* Pls.' Resp. 4-6. In *West Virginia v. EPA*, the government continued to "vigorously defend[ ] the legality of" the challenged agency position. 142 S. Ct. 2587, 2607 (2022) (internal quotations and citation omitted). Similarly, in *Sackett v. EPA*, the court rejected a "litigation strategy" in which the government "assert[ed] at the eleventh hour that the dispute has actually been moot for a long time" based on a belated disclosure of an individualized non-enforcement decision. 8 F.4th 1075, 1085-86 (9th Cir. 2021), *cert. granted in part*, 142 S. Ct. 896 (Mem.) (Jan. 24, 2022) (No. 21-454). *Fikre* too involved only "an individualized determination untethered to any explanation or change in policy, much less an abiding change in policy." 904 F.3d at 1039-40; *see also Bell v. City of Boise*, 709 F.3d 890, 900-01 (9th Cir. 2013) (declining to find mootness on the impermanence of a policy change "vested entirely in the Chief of Police" that "could be easily abandoned or altered in the future"). None of these cases resemble this case, where BLM has issued formal new actions that supersede those challenged and resolve Plaintiffs' alleged injury.

For all these reasons, and those presented in their motion, Defendants request that the Court dismiss Plaintiffs' Second Amended Complaint with prejudice.

Respectfully submitted this 25th day of April 2023.

            TODD KIM
            Assistant Attorney General
            United States Department of Justice
            Environment and Natural Resources Division

            */s/ Paul A. Turcke*
            PAUL A. TURCKE (Idaho Bar. No. 4759)
            Trial Attorney, Natural Resources Section

1290 West Myrtle Street, Suite 500
Boise, ID 83702
202-532-5994 || 202-305-0275 (fax)
paul.turcke@usdoj.gov

*Counsel for Defendants*

Of Counsel:

MIKE GIERYIC
Office of the Regional Solicitor, Alaska Region
4230 University Drive, Suite 300
Anchorage, AK 99508
907-271-1420
mike.gieryic@sol.doi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2023, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Paul A. Turcke*
Paul A. Turcke