# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

NATIONAL AUDUBON SOCIETY,
*et al.*,

       Plaintiffs,

    v.

DEB HAALAND, in her official
capacity as Secretary of the Interior,
*et al.*,

       Defendants,

    and

STATE OF ALASKA,

       Intervenor-Defendant.

Case No. 3:20-cv-00206-SLG

## ORDER RE MOTIONS TO DISMISS

Before the Court are two motions to dismiss: one filed by Federal Defendants[1] at Docket 65 and the other filed by Intervenor-Defendant State of Alaska (the "State") at Docket 66. The motions seek dismissal of Plaintiffs'[2] Second Amended Complaint, which challenges two documents prepared pursuant

---

[1] Federal Defendants are the United States Department of the Interior; the Bureau of Land Management; Deb Haaland, in her official capacity as Secretary of the Interior; Tracy Stone-Manning, in her official capacity as the Director of the Bureau of Land Management; and Steve Cohn, in his official capacity as Alaska State Director of the Bureau of Land Management. *See* Docket 63 at 1.

[2] Plaintiffs are the National Audubon Society, Center for Biological Diversity, Friends of the Earth, and Stand.earth. *See* Docket 63 at 1.

to the National Environmental Policy Act ("NEPA")[3] relating to the National Petroleum Reserve in Alaska ("NPR-A"). Both motions seek dismissal on jurisdictional grounds. Plaintiffs opposed the motions at Docket 70, to which Federal Defendants replied at Docket 71 and the State replied at Docket 72. Oral argument on the motions was not requested and was not necessary to the Court's determination.

## BACKGROUND

### I. NPR-A Management Planning

The NPR-A is a 23.6-million-acre area on Alaska's North Slope and is the nation's largest single unit of public land.[4] "Established as the Naval Petroleum Reserve in 1923, the NPR-A was renamed and its management authority was transferred to the Secretary of the Interior in 1976 by the Naval Petroleum Reserves Production Act ("NPRPA"), 42 U.S.C. § 6501 *et seq.*"[5] Four years later, the NPRPA was amended by an appropriations rider that directed the Secretary of the Interior to open the NPR-A to private exploration and establish "an expeditious program of competitive leasing of oil and gas" in the NPR-A.[6]

---

[3] 42 U.S.C. § 4321 *et seq.*

[4] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 516 F. Supp. 3d 943, 946 (D. Alaska 2021).

[5] *Id.*; *see also* Docket 63 at 8, ¶ 23.

[6] *Sovereign Iñupiat*, 515 F. Supp. 3d at 946 (quoting Pub. L. No. 96-514, 94 Stat. 2964 (1980) (codified at 42 U.S.C. § 6506a)); *see also* Docket 63 at 8–9, ¶ 24.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 2 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 2 of 37

The NPRPA directs the Bureau of Land Management ("BLM") "to lease . . . land [in the NPR-A] to private entities for oil and gas development, while taking such measures as BLM deems necessary or appropriate to mitigate adverse environmental impacts."[7] To carry out this mandate, BLM follows a multi-stage process that begins with the development of an Integrated Activity Plan ("IAP") designed to determine appropriate land management at a broad scale.[8] BLM analyzes an IAP through an environmental impact statement ("EIS") prepared in accordance with NEPA.[9] In this context, BLM has used an EIS to identify and compare various alternatives for "range[s] of land allocations" within the NPR-A, "including different options for the percentage of lands that would be made available for oil and gas leasing."[10]

An EIS containing a preferred alternative is initially released to the public in draft form and is subject to comment before being finalized.[11] After the EIS is finalized, BLM selects a preferred management alternative from among those

---

[7] *N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, 983 F.3d 1077, 1081 (9th Cir. 2020) [hereinafter *NAEC*] (citing 42 U.S.C. § 6506a); *see also* Docket 63 at 9, ¶ 26.

[8] *See NAEC*, 983 F.3d at 1082 (explaining that the IAP at issue "analyzed . . . alternative proposals for a range of land allocations, including different options for the percentage of lands that would be made available for oil and gas leasing").

[9] *See id.* "BLM's actions taken pursuant to the authority of NPRPA are . . . subject to NEPA procedural requirements for the analysis of potential environmental impacts and reasonable alternatives." *Id.* at 1081 (citing 42 U.S.C. § 4332(2)(C)).

[10] *Id.* at 1082.

[11] *See Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037, 1045 (9th Cir. 2011) (citing 40 C.F.R. § 1503.4(a)); *see also* Docket 63 at 7, ¶ 17.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 3 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 3 of 37

analyzed in the EIS.[12]  This selection is memorialized in a record of decision ("ROD").[13]  BLM may then conduct lease sales in specified tracts in areas that the IAP has designated as open for leasing.[14]

## II.    Publication and Revision of the 2013 IAP/ROD

BLM has undertaken two NPR-A management planning efforts in recent years.  In 2012, BLM published a combined IAP and EIS (the "2012 EIS"), which culminated in a 2013 ROD "that finalized [BLM's] decision to manage the [NPR-A] under the preferred alternative."[15]  Through this decision (the "2013 IAP/ROD"), BLM "designated approximately 52 percent (11.8 million acres) of the [NPR-A subject to its management] as available for oil and gas leasing, subject to requirements to protect other values, and prohibited altogether oil and gas leasing on approximately 11 million acres particularly valuable for wildlife habitat or for other uses."[16]  BLM then proceeded to hold annual lease sales in specified tracts within the areas open for leasing until 2019.[17]

---

[12] *See NAEC*, 983 F.3d at 1082; Docket 63 at 16, ¶ 50.

[13] See *NAEC*, 983 F.3d at 1082.

[14] Docket 63 at 11–12, ¶ 34.

[15] *NAEC*, 983 F.3d at 1082.

[16] Docket 63 at 12, ¶ 35.

[17] Docket 63 at 12, ¶ 36.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 4 of 37

In 2017, the Secretary of the Interior signed Secretarial Order 3352, which directed BLM to review and develop a revised IAP for the NPR-A.[18]  Accordingly, in late 2019, BLM released a draft EIS for the purpose of evaluating management alternatives for a new IAP; in mid-2020, BLM published a notice of availability of the final document ("2020 EIS").[19]  Like the 2012 EIS, the 2020 EIS considers various programmatic alternatives that classify land in the NPR-A as either open or closed to oil and gas leasing.[20]  The alternatives explored in the 2020 EIS include a no-action alternative that would leave the 2013 IAP/ROD in place, and four action alternatives, all but one of which would open more of the NPR-A to leasing.[21]  The 2020 EIS indicated that BLM's preferred alternative was one that would open 82 percent, or about 18.5 million acres, of the NPR-A to leasing.[22]

Critical to this case, when it was issued, the 2020 EIS also purported "to fulfill NEPA requirements for lease sales conducted at least through December 2039 and potentially thereafter."[23]

---

[18] Docket 63 at 13, ¶ 37.

[19] Docket 63 at 13, ¶¶ 37–39.

[20] Docket 63 at 13, ¶ 40.

[21] Docket 63 at 13, ¶ 40.  The 2013 IAP designated approximately 52 percent of the NPR-A as available for leasing.  Docket 63 at 12, ¶ 35.

[22] Docket 63 at 13, ¶ 40.

[23] Docket 63 at 2, ¶ 2.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 5 of 37

### III. Initial Complaint, First Amended Complaint, and Stays

In August 2020, Plaintiffs brought this case, challenging the 2020 EIS.[24] Plaintiffs' initial complaint alleged that Federal Defendants had violated NEPA by failing to provide an adequate analysis of the direct, indirect, and cumulative impacts of each alternative, and by failing to consider reasonable alternatives.[25] In connection with these claims, Plaintiffs flagged the language in the 2020 EIS that signaled BLM's intent for the EIS to fulfill NEPA requirements for future lease sales "at least through December 2039."[26] Plaintiffs requested that the Court set the 2020 EIS aside, along with "any actions taken by [Federal] Defendants in reliance on [it]."[27]

Plaintiffs filed their initial complaint 59 days after BLM published its notice of availability of the 2020 EIS.[28] Because BLM had not yet issued a ROD, the Court stayed this proceeding.[29] In December 2020, BLM issued an IAP/ROD (the "2020 IAP/ROD") in which it formally adopted with minor modifications the preferred alternative identified in the 2020 EIS as the new IAP for the NPR-A.[30] In February

---

[24] Docket 1.

[25] Docket 1 at 3, 20–21, ¶¶ 4, 54–58.

[26] Docket 1 at 20, ¶ 54.

[27] Docket 1 at 21, ¶¶ A–B.

[28] Docket 63 at 3, ¶ 6.

[29] Docket 10.

[30] Docket 63 at 3, ¶ 50.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al*.
Order re Motions to Dismiss
Page 6 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 6 of 37

2021, Plaintiffs filed a First Amended Complaint challenging both the 2020 IAP/ROD and the 2020 EIS.[31]  The First Amended Complaint added several new claims pursuant to the Administrative Procedure Act ("APA"),[32] the Endangered Species Act,[33] the NPRPA, and NEPA.[34]

In March 2021, Federal Defendants moved to stay this case for 60 days while "new officials" within the Department of the Interior ("Interior") reviewed the 2020 IAP/ROD pursuant to an executive order.[35]  The Court granted this motion as well as several subsequent motions to extend the stay.[36]  During the stay, Interior issued a memorandum to BLM indicating that it was considering "adopting, in a new ROD, a different alternative" from among the ones analyzed in the 2020 EIS.[37]  To assist its decision-making, Interior directed BLM "to undertake an evaluation of the 2020 [EIS]."[38]

---

[31] *See* Docket 24 at 28–36, ¶¶ 76–105.

[32] 5 U.S.C. § 551 *et seq.*

[33] 16 U.S.C. § 1531 *et seq.*

[34] Docket 24 at 28–39, ¶¶ 76–113, A–B.

[35] Docket 27 at 2; Docket 63 at 16–17, ¶ 55; *see also* Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis, Exec. Order No. 13990, 86 Fed. Reg. 7037 (Jan. 20, 2021).

[36] Docket 28; Docket 30; Docket 33; Docket 39; Docket 46; Docket 51; Docket 53.

[37] Docket 63 at 16–17, ¶ 55.

[38] Docket 63 at 16–17, ¶ 55.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 7 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 7 of 37

## IV. 2022 IAP/ROD and Errata to the 2020 EIS

In April 2022, BLM replaced the 2020 IAP/ROD with a new IAP/ROD (the "2022 IAP/ROD") that adopted the 2020 EIS's no-action alternative.[39] As a result of this decision, "most provisions of the 2013 [IAP] are again applicable in the [NPR-A], including that approximately 11.8 million acres (52 percent) of the [NPR-A] [are] available for oil and gas leasing."[40] In support of the 2022 IAP/ROD, in April 2022, BLM also issued a determination of NEPA adequacy ("DNA"), which states that "the new ROD would authorize lease sales."[41]

Several months later, in September 2022, BLM published an errata sheet to the 2020 EIS that made what it described as "minor edits" to the EIS. Specifically, it addressed the EIS's statement that the EIS would fulfill NEPA requirements for lease sales through at least December 2039.[42] The errata sheet deleted that statement and replaced it with the following sentence: "This programmatic IAP/EIS is not intended to, by itself and without further NEPA analysis, fulfill NEPA

---

[39] Docket 63 at 17, ¶¶ 57–58.

[40] Docket 63 at 17, ¶ 59.

[41] Docket 63 at 18, ¶ 61; *see also* 43 C.F.R. § 46.120(c) (authorizing use of an existing NEPA analysis "in its entirety" if the appropriate agency "determines, with appropriate supporting documentation, that [the analysis] adequately assesses the environmental effects of the proposed action and reasonable alternatives"). The Court takes judicial notice of the existence and contents of the DNA. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (holding that courts may take judicial notice of undisputed matters of public record).

[42] Docket 65-2 at 1; Docket 63 at 18, ¶ 63.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 8 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 8 of 37

requirements for future lease sales."[43]  The errata sheet made changes only to the 2020 EIS; it did not address the DNA issued in April 2022.

## V.    Second Amended Complaint and Motions to Dismiss

In November 2022, after the Court lifted the stay, Plaintiffs filed a Second Amended Complaint.[44]  In this complaint, Plaintiffs abandon their challenge to the 2020 IAP/ROD and their claims previously brought under statutes other than NEPA and the APA.[45]  Plaintiffs' two remaining claims are that Federal Defendants violated NEPA and the APA by: (1) failing "to consider a reasonable range of leasing alternatives and the impacts of those alternatives" in the 2020 EIS; and (2) failing to take a "hard look" at "the direct, indirect, and cumulative impacts of greenhouse gas emissions from lease sales" in the NPR-A.[46]  Plaintiffs ask the Court to, among other things: (1) "declare that the 2020 EIS fails to fulfill the requirements of NEPA for the purpose of authorizing lease sales in the [NPR-A]"; (2) "[v]acate the 2020 EIS as applied to future lease sales"; and (3) "[v]acate in part

---

[43] Docket 65-2 at 2; Docket 63 at 3, ¶ 7.

[44] Docket 63.

[45] *Compare* Docket 24, *with* Docket 63.

[46] Docket 63 at 19–24, ¶¶ 72–91; *see also Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 992–93 (9th Cir. 2004) (explaining that when reviewing the adequacy of a NEPA document, a court's "task is to ensure that the agency has taken a 'hard look' at the potential environmental consequences of the proposed action" (quoting *Churchill County v. Norton*, 276 F.3d 1060, 1072 (9th Cir. 2001))).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 9 of 37

[the 2022 IAP/ROD] only to the extent the decision authorizes future lease sales without additional NEPA analysis."[47]

In the Second Amended Complaint, Plaintiffs allege that the September 2022 errata sheet "does not eliminate assertions in the 2020 EIS or the 2022 [DNA] that the record of decision 'would authorize lease sales.'"[48]  According to Plaintiffs, "[t]hese statements create ambiguity regarding whether the EIS was intended to fulfill NEPA requirements for future lease sales."[49]  Consequently, Plaintiffs maintain, "BLM could . . . attempt to rely on the 2020 EIS as the sole NEPA analysis for a future lease sale decision or could reverse its position that the 2020 EIS is not intended to fulfill NEPA requirements for future lease sales."[50]  Plaintiffs assert that if BLM engages in either course of action, it is possible that any subsequent legal challenge asserting the arguments they raise in this case would be time-barred.[51]

In January 2023, Federal Defendants and the State each filed a motion to dismiss the Second Amended Complaint.  Federal Defendants bring their motion

---

[47] Docket 63 at 24, ¶¶ A–C.

[48] Docket 63 at 19, ¶ 66.

[49] Docket 63 at 19, ¶ 66.

[50] Docket 63 at 19, ¶ 69.

[51] Docket 63 at 19, ¶¶ 70–71; *see also* 42 U.S.C. § 6506a(n)(1) ("Any action seeking judicial review of the adequacy of any program or site-specific environmental impact statement under section 102 of [NEPA] concerning oil and gas leasing in the [NPR-A] shall be barred unless brought in the appropriate District Court within 60 days after notice of the availability of such statement is published in the Federal Register.").

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 10 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 10 of 37

pursuant to Federal Rule of Civil Procedure 12(b)(1), while the State brings its motion pursuant to both Rule 12(b)(1) and Rule 12(b)(6).[52]

## LEGAL STANDARD

Rule 12(b)(1) requires dismissal of an action when plaintiffs fail to meet their burden of establishing subject-matter jurisdiction.[53] Courts lack subject-matter jurisdiction when plaintiffs do not have standing or when their claims are moot or not ripe for adjudication.[54] "A Rule 12(b)(1) jurisdictional attack may be facial or factual."[55] In a facial attack, "the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."[56] In a factual attack, the challenger "attack[s] the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court."[57] When resolving a factual attack on jurisdiction, a court may "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations."[58]

---

[52] Docket 65 at 1; Docket 66 at 1.

[53] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[54] *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("[S]tanding and mootness both pertain to a federal court's subject-matter jurisdiction . . . ."); *St. Clair*, 880 F.2d at 201 ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction . . . .").

[55] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[56] *Id.*

[57] *St. Clair*, 880 F.2d at 201.

[58] *Safe Air for Everyone*, 373 F.3d at 1039.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 11 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 11 of 37

Rule 12(b)(6), in contrast, requires dismissal for a complaint's "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[59] A complaint must provide "well-pleaded facts, not legal conclusions, that 'plausibly give rise to an entitlement to relief.'"[60]

## DISCUSSION

## I.    Justiciability

Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controversies."[61] This case-or-controversy limitation requires courts to determine whether a plaintiff's claims are justiciable.[62] Justiciability includes the doctrines of standing, ripeness, and mootness.[63]

Federal Defendants and the State move to dismiss Plaintiffs' lawsuit on the grounds that the Second Amended Complaint does not demonstrate that Plaintiffs

---

[59] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[60] *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (first citing *Twombly*, 550 U.S. at 570; and then quoting *Iqbal*, 556 U.S. at 679).

[61] *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

[62] *See* Fed. R. Civ. P. 12(h)(3) (providing that "the court must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction"); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (explaining that a court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies").

[63] *Culinary Workers Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 12 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 12 of 37

have standing and that Plaintiffs' current claims are unripe.[64]  Plaintiffs urge the Court to reject this proposed analytical framework and instead "analyze its continuing jurisdiction [solely] through the doctrine of . . . mootness."[65]  Plaintiffs reason that mootness is the pertinent issue "[w]hen an intervening event," such as BLM's publication of the errata sheet, "potentially eliminates a controversy."[66]

Whereas the standing and ripeness inquiries ask whether a case or controversy existed at the start of the case, the mootness inquiry asks whether that case or controversy "persist[s] throughout all stages of the litigation."[67]  Put differently, "[m]ootness [is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."[68]  Accordingly, the doctrines of standing and ripeness apply to determine justiciability at the outset of

---

[64] Docket 65 at 8–11; Docket 66 at 6–13.

[65] Docket 70 at 6.

[66] Docket 70 at 6.

[67] *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128–29 (9th Cir. 2005) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)); *see also Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (discussing "close[] relat[ion]" between standing and ripeness and explaining that whereas "standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addressees [sic] *when* that litigation may occur" (emphasis in original) (citations omitted)); *Jackson v. Cal. Dep't of Mental Health*, 399 F.3d 1069, 1073 (9th Cir. 2005) ("Mootness issues arise later in the case, when the federal courts are already involved and resources have already been devoted to the dispute." (citation omitted)).

[68] *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 556 (9th Cir. 2010) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al*.
Order re Motions to Dismiss
Page 13 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 13 of 37

a case.[69]  In contrast, the mootness doctrine applies to assess justiciability when events have arisen after the case was filed.[70]

The parties do not dispute that Plaintiffs' claims were justiciable when the First Amended Complaint was filed in early 2021.  Rather, Federal Defendants and the State challenge Plaintiffs' ability to continue with this action in light of factual developments since the start of this case—specifically, BLM's issuance of the April 2022 IAP/ROD and the September 2022 errata sheet to the 2020 EIS.[71]  These arguments are appropriately evaluated within the mootness framework.[72]  This is of significance because plaintiffs are required to establish the elements of standing

---

[69] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (noting courts' obligation to determine whether plaintiffs "ha[ve] Article III standing at the outset of the litigation").  Typically, the "outset of the litigation" refers to the filing of the original complaint. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)).  But when the original complaint is "defective" and has been amended pursuant to Federal Rule of Civil Procedure 15(d), the operative facts are those that existed at the time the amended complaint was filed.  *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015) (noting that "Rule 15(d) permits a supplemental pleading to correct a defective complaint and circumvents 'the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief'" (quoting 6A Charles A. Wright et al., *Federal Practice and Procedure* § 1505 (3d ed. 2015))).  Here, while the original complaint was not defective, it could not challenge the ROD, which was not issued before the statute of limitations ran on the challenge to the 2020 EIS.

[70] *See Clark*, 259 F.3d at 1006.

[71] *See* Docket 65 at 8–11; Docket 66 at 6–13; *see also Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014), *as amended* (Sept. 2, 2014) (observing that "[w]hen addressing the sufficiency of a showing of injury-in-fact grounded in potential future harms, Article III standing and ripeness issues often 'boil down to the same question'" (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014))).

[72] *Cf. Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000) (explaining that evaluating standing when facts later change "conflates questions of standing with questions of mootness: while it is true that a plaintiff must have a personal interest at stake throughout the litigation of a case, such interest is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter" (citations omitted)).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 14 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 14 of 37

and ripeness, while defendants carry the "heavy burden" of demonstrating that a "once-live" case has become moot.[73]

The State raises several other challenges to Plaintiffs' standing. Specifically, the State challenges the sufficiency of Plaintiffs' allegations concerning their members' alleged injuries, as well as the connection between this case and Plaintiffs' organizational purposes.[74] As these issues are properly addressed under a standing rubric, the Court addresses them first before turning to mootness.

## A. Plaintiffs' Associational and Organizational Standing

Article III standing is a "threshold question in every federal case, determining the power of the court to entertain the suit."[75] Plaintiffs bear the burden of demonstrating the "irreducible constitutional minimum of standing," which consists of three elements.[76] Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[77]

---

[73] *See Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Friends of the Earth*, 528 U.S. at 189)); *West Virginia v. E.P.A.*, 142 S. Ct. 2587, 2607 (2022); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[74] Docket 66 at 7–11.

[75] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[76] *Lujan*, 504 U.S. at 560.

[77] *Spokeo*, 578 U.S. at 338 (first citing *Lujan*, 504 U.S. at 560–61; and then citing *Friends of the Earth*, 528 U.S. at 180–81). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth*, 422 U.S. at 518).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 15 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 15 of 37

Plaintiffs assert standing both in their own right and on their members' behalf.[78] An organizational plaintiff has "organizational standing" if it "satisf[ies] the traditional standing requirements," allowing it "to seek judicial relief from injury to itself and to vindicate whatever rights" it may have.[79] And an organizational plaintiff has "associational standing" when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[80]

The State contends that Plaintiffs have not alleged facts sufficient to show they have associational standing.[81] The State insists that because Plaintiffs' associational standing "is not self-evident," their alleged injuries—including that oil and gas leasing in the NPR-A would harm their members' interests—must be pleaded with greater specificity or supported by declarations from their members.[82]

---

[78] *See* Docket 63 at 4–7, ¶¶ 12–17.

[79] *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019) (citations omitted).

[80] *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

[81] Docket 66 at 7–10.

[82] Docket 66 at 9; Docket 72 at 7. In particular, the State asserts that Plaintiffs have not "explained how [their] members' interests would be 'directly and irreparably injure[d]'" by oil and gas leasing in the NPR-A, or "indicated what portions of the . . . NPR-A are used by these members." Docket 66 at 8.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 16 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 16 of 37

As to Plaintiffs' organizational standing, the State suggests that their alleged injuries amount to no more than "frustration of [their organizational] purpose[s]."[83]

Turning first to associational standing, Plaintiffs allege that their members engage in subsistence activities, recreation, and wildlife viewing, among other things, in areas of the NPR-A subject to future leasing under the 2022 IAP/ROD.[84] Plaintiffs further allege that oil and gas leasing would harm these interests by emitting millions of tons of greenhouse gases, which would worsen what they assert are the already "severe" effects of climate change on the NPR-A.[85] Taking these allegations as true and construing them in the light most favorable to Plaintiffs,[86] they plausibly allege a concrete and particularized injury, a causal connection between that injury and BLM's decision to hold lease sales, and a likelihood that a favorable decision will lessen harm to their members.[87] At this stage in the litigation, Plaintiffs need not provide declarations from their

---

[83] Docket 72 at 9.

[84] Docket 63 at 7, ¶ 16.

[85] *See* Docket 63 at 7, 9–11, 15, ¶¶ 16, 28–33, 45.

[86] *See Lee*, 250 F.3d at 679.

[87] *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990))); *Ecological Rts. Found.*, 230 F.3d at 1147 ("The 'injury in fact requirement' in environmental cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that interest is impaired by a defendant's conduct." (citations omitted)); *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001) (holding that plaintiffs "seeking to enforce a procedural right under NEPA to protect their concrete interests" had standing, even though they could not "establish that a revised EIS would result in a different" course of action).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 17 of 37

members or plead their injury with greater particularity to demonstrate associational standing.[88]

The State next asserts that Plaintiffs have not pleaded a sufficient factual basis to support their organizational standing because they have not alleged how BLM's selection of the no-action alternative in the 2022 IAP/ROD affects their ability to achieve their organizational purposes.[89]  As discussed above, however, when assessing whether Plaintiffs have standing, the Court looks to the facts as they existed at the outset of this litigation, not at events that have occurred since that time.  And the State does not dispute that Plaintiffs had organizational standing based on BLM's initial selection in the 2020 IAP/ROD of an alternative that opened more of the NPR-A to leasing.[90]  The Court finds Plaintiffs' allegations—including that "adequate information and public participation" are required for them to achieve their organizational purposes of "monitor[ing] the use of public lands in the [NPR-A] . . . , educat[ing] [their] members and the public about the management of these lands, and advocat[ing] policies and practices that protect the natural and

---

[88] *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (holding that plaintiff organization was not required to identify specific members injured "[w]here it [was] relatively clear, rather than merely speculative, that one or more members ha[d] been or w[ould] be adversely affected by [the] defendant's action," and where the identity of particular members was not necessary for the defendant to "understand and respond" to the claim of injury).  The Court rejects the State's suggestion that Plaintiffs are required to plead their injury with the same degree of particularity as in cases resolved on summary judgment, such as *Ecological Rights Foundation v. Pacific Lumber Company*, 230 F.3d 1141 (9th Cir. 2000).  *See* Docket 72 at 7.

[89] Docket 66 at 10–11.

[90] Docket 63 at 3, 13, ¶¶ 6, 40.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al*.
Order re Motions to Dismiss
Page 18 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 18 of 37

cultural values and sustainable resources of these lands"—are sufficient to plausibly allege organizational standing.[91]

The State also contests Stand.earth's standing on one other ground: the relevance of this case to this organization's purposes.[92] However, the State narrowly focuses on one of Stand.earth's general purposes: "to challenge corporations and governments to treat people and the environment with respect because humanity and our climate depend on it."[93] Plaintiffs allege that Stand.earth's purposes also include "challeng[ing] destructive . . . government policies," advocating for "the urgent need to transition away from fossil fuels, including oil," and "protect[ing] the Arctic."[94] The subject of this litigation—BLM's "compliance with NEPA in evaluating and fully disclosing the alternatives and impacts of its decisions to sell oil and gas leases in the [NPR-A]"—is germane to these purposes.[95] The State's challenge to Stand.earth's standing is thus unavailing.

---

[91] *See* Docket 63 at 7, ¶ 17; *Rodriguez*, 930 F.3d at 1134 ("[A]n organization may establish 'injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [injurious behavior] in question.'" (quoting *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004))); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (concluding that dismissal of organization's claims for lack of standing was improper where the organization "broadly alleged" that defendants' discriminatory steering practices had "impaired [its] ability" to provide counseling and referral services by forcing it to divert resources elsewhere).

[92] Docket 66 at 9.

[93] Docket 66 at 9.

[94] Docket 63 at 6, ¶ 15.

[95] *See* Docket 70 at 14.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 19 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 19 of 37

In sum, Plaintiffs have adequately pleaded their associational and organizational standing.

**B.    Mootness**

In general, "[a] case becomes moot whenever it loses its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."[96]  However, a party "cannot automatically moot a case simply by ending its unlawful conduct once sued."[97]  For a case to be moot when a party has voluntarily ceased the challenged conduct, the party must show that it is "absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[98]  When the party asserting mootness is the government, courts "presume that it acts in good faith, though the government must still demonstrate that the change in its behavior is 'entrenched' or 'permanent.'"[99]  When assessing whether the government has

---

[96] *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1157 (9th Cir. 2006) (quoting *Cantrell*, 241 F.3d at 678), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

[97] *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

[98] *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1274 (9th Cir. 1998) (alteration in original) (first quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); and then quoting *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 854 (9th Cir. 1985)).

[99] *Fikre v. F.B.I.*, 904 F.3d 1033, 1037 (9th Cir. 2018) (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 20 of 37

carried this "heavy burden," courts consider "the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s)."[100]

As an initial matter, Federal Defendants maintain that these principles of the voluntary cessation doctrine are inapplicable to this case.[101]  Rather, they assert Plaintiffs are challenging a "final agency action that no longer exists" because it has been "superseded."[102]  The Court disagrees for two reasons.  First, BLM's change in position through its 2022 errata sheet is more accurately characterized as "a voluntary change in official stance," which courts analyze using the voluntary cessation framework.[103]  And second, the case Federal Defendants cite does not support the notion that the voluntary cessation doctrine is inapplicable here.[104]  The Court thus analyzes mootness under the voluntary cessation framework described above.[105]

---

[100] *Id.* at 1039 (citations omitted).

[101] Docket 71 at 3–4.

[102] Docket 71 at 3–4.

[103] *See Fikre*, 904 F.3d at 1039 (involving a challenge to a decision by the FBI to revoke an individual's flying privileges, a decision that the agency renounced during the litigation).

[104] *See* Docket 71 at 4 (citing *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 39 (D.D.C. 2022)).  In that case, the district court analyzed mootness under the voluntary cessation framework and held that the plaintiffs' claim was moot because "there [was] no reason to think that the [challenged] action w[ould] reoccur."  *Pub. Emps. for Env't Resp.*, 605 F. Supp. 3d at 39.  Key to the court's holding was that the agency had formally promulgated a rule that explicitly "superseded" the challenged policy.  *Id.*  Here, in contrast, BLM did not follow notice-and-comment rulemaking procedures when it issued the errata sheet that deleted and replaced the challenged statements in the 2020 EIS.

[105] The Court notes that even if the voluntary cessation framework did not apply, this case would not be moot.  Under the standard mootness test, "a case is moot only where no effective relief

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 21 of 37

Plaintiffs assert that this case is not moot because Federal Defendants have not met their heavy burden of showing that BLM will not reverse its stance and rely on the 2020 EIS as the sole NEPA analysis for a future lease sale decision.[106] Plaintiffs explain that, "[o]ther than posting the [errata sheet in a 'documents' tab] on its website and describing it in a status report filed with the Court, [BLM] did not publicize the change[s]" the errata sheet made to the 2020 EIS.[107] Furthermore, Plaintiffs contend that Interior "did not undertake any public process in connection with its change in position" or "describe the reason for" the change.[108] Based on this lack of process and transparency, Plaintiffs conclude that BLM could easily

---

for the alleged violation can be given." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002) (citing *Cantrell*, 241 F.3d at 678). "The party asserting mootness bears a 'heavy burden' in meeting this standard." *Rosebrock*, 745 F.3d at 971 (quoting *Friends of the Earth*, 528 U.S. at 189). The DNA that BLM issued in support of the 2022 IAP/ROD explicitly states that "[this] ROD would authorize lease sales." Docket 63 at 18, ¶ 61. Plaintiffs highlight that the subsequently issued errata sheet for the EIS "d[id] not eliminate" this assertion, and they maintain that the tension between these two documents may result in "ambiguity regarding whether the [2020] EIS was intended to fulfill NEPA requirements for future lease sales." Docket 63 at 19, ¶ 66. Federal Defendants dispute that any such ambiguity exists, implying that the language in the "modifi[ed]" EIS controls. *See* Docket 71 at 2. The Court agrees with Plaintiffs that the discrepancies between the DNA and the errata sheet create ambiguity on this issue. Granting Plaintiffs their requested relief would clarify this ambiguity, which could prove important to Plaintiffs because—as discussed in detail below—a future suit raising similar issues could be time-barred. *Cf. Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1182–83 (9th Cir. 2023) ("[P]ublic interest in having the legality of the practices settled[] militates against a mootness conclusion." (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953))).

[106] Docket 70 at 3–10.

[107] Docket 70 at 7 (citation omitted).

[108] Docket 70 at 7–8.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 22 of 37

reverse course again "by, for example, posting a new [e]rrata [s]heet revising the EIS to cover lease sales again."[109]

Federal Defendants respond that BLM's publication of the errata sheet was a formal action that fully and clearly "supersede[d]" its previous position regarding the sufficiency of the 2020 EIS to support future lease sales.[110] Federal Defendants assure the Court that its change in position is sufficiently permanent to moot this case because BLM "cannot, despite Plaintiffs' fears, rescind the change or revert to [its previous] position . . . without conducting a further process leading to a new decision."[111] Federal Defendants elaborate that any "future reversal of position . . . would demand some combination of the procedural requirements 'to acquire new data, make new decisions including issuing new notice, provide opportunity for public comment, and finally issue a new decision that must comply with all applicable laws and which would be subject to challenge.'"[112]

In *Rosebrock v. Mathis*, the Ninth Circuit listed several factors that courts may consider when evaluating mootness in voluntary cessation cases involving a

---

[109] Docket 70 at 8.

[110] Docket 71 at 4–7.

[111] Docket 71 at 5.

[112] Docket 71 at 6–7 (quoting *League of Wilderness Defs.-Blue Mountains Biodiversity Proj. v. Smith*, Case No. CV. 04-1595-PK, 2006 WL 3692535, at *4 (D. Or. Dec. 12, 2006) (detailing steps needed to proceed with new timber sale)).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 23 of 37

government agency's policy change.[113]  In these cases, mootness is more likely where:

> (1) the policy change is evidenced by language that is "broad in scope and unequivocal in tone," (2) the policy change fully "addresses all of the objectionable measures that [the agency] officials took against the plaintiffs in the case[,]" (3) "the case in question was the catalyst for the agency's adoption of the new policy," (4) the policy has been in place for a long time . . . , and (5) "since the policy's implementation the agency's officials have not engaged in conduct similar to that challenged by the plaintiff[.]'"[114]

On the other hand, mootness is less likely if the "new policy . . . could be easily abandoned or altered in the future."[115]

Starting with the first *Rosebrock* factor, BLM's position expressed in the errata sheet—that the 2020 EIS "is not intended to, by itself and without further NEPA analysis, fulfill NEPA requirements for future lease sales"—conflicts with the 2022 DNA's statement that the 2022 IAP/ROD "would authorize lease sales."[116] Because BLM has not explicitly renounced this language in the DNA, the language in the errata sheet that purports to change the agency's position is ambiguous.[117]

---

[113] 745 F.3d at 972.

[114] *Id.* (citations and original alterations omitted).

[115] *Id.* (alteration in original) (citation omitted).

[116] *See* Docket 63 at 3, 18, ¶¶ 7, 61.

[117] In some cases, including one from this district cited by Federal Defendants, an agency's emphatic assurances that a future reversal of position will not happen can be a consideration weighing in favor of mootness.  *See Mothership Fleet Coop. v. Ross*, 426 F. Supp. 3d 611, 619–20 (D. Alaska 2019) (concluding that claims were moot in part because the defendant agency "repeated[ly]" and "express[ly]" committed to its new policy, including by characterizing the possibility of a reversal in position as "very, very, very unlikely" at oral argument).  Here, in

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 24 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 24 of 37

Moreover, the relevant language in the errata sheet consists of a single sentence that falls short of expressly acknowledging that the 2020 EIS is inadequate to satisfy NEPA requirements for future lease sales.

The primary case Federal Defendants cite with respect to this factor, *White v. Lee*,[118] is readily distinguishable. In *White*, the Ninth Circuit affirmed the district court's determination that a claim was moot due to a policy change that the Department of Housing and Urban Development set forth in a memorandum. Describing the memorandum's expansive and detailed language used to instruct agency officials on proper behavior in situations involving First Amendment concerns, the Ninth Circuit concluded that the memorandum was "broad in scope and unequivocal in tone."[119] Here, in contrast, the language of the errata sheet in conjunction with the 2022 DNA is not unequivocal in tone nor broad in scope. The Court finds that the first *Rosebrock* factor weighs against mootness.

So, too, does the second factor. The NPRPA's statute of limitations requires "[a]ny action seeking judicial review of the adequacy of any program or site-specific

---

contrast, the Court notes that Federal Defendants do not expressly repudiate the DNA's contradictory language, even in their briefing.

[118] 227 F.3d 1214 (9th Cir. 2000).

[119] *Id.* at 1242–43 (explaining that, among other things, the memorandum "list[ed] examples of protected speech activity," provided criteria for "any investigation which may be necessary to obtain information about the extent to which the First Amendment may be applicable," prohibited specific types of document requests, instructed officials to clear potential enforcement suits "with Headquarters before [a] complaint is filed," and stated "[m]ore broadly" that "where [Fair Housing Act] concerns 'intersect with First Amendment protections,' [agency] officials must defer to the latter").

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 25 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 25 of 37

[EIS] . . . concerning oil and gas leasing in the [NPR-A]" to be brought "within 60 days after notice of the availability of [the EIS] is published in the Federal Register."[120]   Plaintiffs express a valid concern that this provision could bar any future legal challenge to the adequacy of the 2020 EIS with respect to site-specific leasing decisions.[121]  To wit, if BLM "attempt[s] to rely on the 2020 EIS as the sole NEPA analysis for a future lease sale decision," Federal Defendants could then argue that the NPRPA's statute of limitations "bars judicial review of the adequacy of the EIS for the lease sale."[122]

Federal Defendants dismiss Plaintiffs' concern, suggesting that if BLM attempts to conduct future lease sales without performing additional NEPA analysis, Plaintiffs could then challenge the adequacy of the 2020 EIS to support these site-specific decisions.[123]  To support this view, Federal Defendants rely on the Ninth Circuit's decision in *Northern Alaska Environmental Center v. U.S. Department of the Interior* ("*NAEC*").[124]  In *NAEC*, plaintiff environmental groups claimed that BLM failed to take a hard look at the impacts of a 2017 lease sale in the NPR-A.  The court considered whether this claim was actually a challenge to the adequacy of the 2012 EIS; that is, the court asked "whether the 2012 EIS *was*

---

[120] 42 U.S.C. § 6506a(n)(1).

[121] Docket 70 at 9.

[122] Docket 63 at 19, ¶¶ 69–70.

[123] Docket 65 at 12–14.

[124] 983 F.3d 1077 (9th Cir. 2020).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 26 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 26 of 37

the EIS" for the lease sale at issue.[125]  The court explained that if this was the case, then the plaintiffs' hard look claim would be time-barred because it had not been raised in 2012.  But if the 2012 EIS was not the EIS for the lease sale, then the claim would not be time-barred.

The court held that the proper inquiry was "whether the initial EIS defined its scope as including the subsequent action."[126]  The court identified several statements in the 2012 EIS that indicated that the document was intended not only to be programmatic in nature, but also to encompass future lease sales.  First, the EIS stated that "BLM anticipates that this IAP/EIS will fulfill the NEPA requirements for the first oil and gas lease sale."[127]  Second, the EIS stated that "[p]rior to conducting each additional sale, [BLM] would conduct a determination of the existing NEPA documentation's adequacy," which could suffice to fulfill the agency's NEPA obligations.[128]  Third, the EIS stated that certain future "actions," other than lease sales, "would require further NEPA analysis."[129]  The court interpreted these statements, taken together, to mean that "all lease sales [were] within the scope of the [2012 EIS]."[130]  Therefore, the plaintiffs' claim that BLM

---

[125] *Id.* at 1085.

[126] *Id.* at 1086.

[127] *Id.* at 1094.

[128] *Id.*

[129] *Id.* at 1094–95.

[130] *Id.* at 1095.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 27 of 37

failed to take a sufficiently hard look at the impacts of the 2017 lease sale "necessarily" challenged the adequacy of the 2012 EIS and was therefore time-barred by the NPRPA's statute of limitations.[131]

This Court reads *NAEC* to support Plaintiffs' assertion that the NPRPA's statute of limitations could bar Plaintiffs from later challenging the adequacy of the 2020 EIS with respect to future lease sales. Federal Defendants point out that the *NAEC* court emphasized that the language in the 2012 EIS provided "reasonable notice" that it was intended to apply to future lease sales.[132] But the Court disagrees with Federal Defendants that the September 2022 errata sheet issued here eliminates the clear notice that was provided in the initial 2020 EIS that it was intended "to fulfill NEPA requirements for lease sales conducted at least through December 2039 and potentially thereafter."[133] Rather, consistent with *NAEC,* the inclusion of this language in the initial EIS triggered the NPRPA's statute of limitations with respect to its site-specific applicability. BLM's subsequent reversal of position—accomplished with a relatively informal document issued two years after it had published notice of the EIS's availability—did not unequivocally and irrevocably extinguish this pronouncement. As a result, Plaintiffs could be foreclosed from bringing claims in the future challenging the adequacy of the 2020

---

[131] *Id.* at 1085, 1096.

[132] *See* Docket 65 at 12–13.

[133] Docket 63 at 2, ¶ 2.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 28 of 37

EIS to fulfill NEPA requirements for a specific leasing decision should the agency again reverse course in the future.

Federal Defendants submit that if BLM attempted to conduct a future lease sale relying solely on the 2020 EIS to satisfy its NEPA obligations, Plaintiffs could then assert that such reliance on the 2020 EIS would violate NEPA's supplementation requirements.[134] But the availability of potential supplementation claims does not eliminate Plaintiffs' risk of future injury.[135] For if the NPRPA's statute of limitations barred Plaintiffs from bringing a future suit challenging the adequacy of the 2020 EIS with respect to site-specific leasing decisions, Plaintiffs would be unable to raise certain arguments in challenging the NEPA adequacy of those decisions. For example, Plaintiffs could not contend—as they do here—that NEPA requires examination of "alternatives that explore when, where, and under what conditions BLM may hold individual lease sales."[136] As the *NAEC* court explained, such contentions must be raised in a timely challenge to the EIS or other NEPA documents, as applicable.[137]

---

[134] Docket 65 at 12, 14.

[135] *See NAEC*, 984 F.3d at 1090 (differentiating between "tiering," which "refers to the incorporation by reference in subsequent EISs or EAs, which concentrate on issues specific to the current proposal, of previous broader EISs that cover matters more general in nature," and "supplementation," which "refers to the process of updating a previous EIS in situations where the agency makes substantial changes to the proposed action, or there are significant new circumstances or information" (citing 40 C.F.R. §§ 1508.28, 1502.9(c))).

[136] Docket 63 at 2, 21, ¶¶ 2, 79–81; *see also NAEC*, 983 F.3d at 1095 (observing that because the scope of the 2012 EIS included all lease sales, "the only potential trigger for additional NEPA analysis [would be] new information or circumstances arising before subsequent sales—i.e., factors potentially requiring supplementation").

[137] *See NAEC*, 983 F.3d at 1085 n.9, 1095 ("Had Plaintiffs brought a timely challenge against

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 29 of 37

The third *Rosebrock* factor favors Federal Defendants' position, as they represent that the changes effected through the errata sheet "were made following conferral with Plaintiffs" and were "intended to resolve the claims in this . . . case."[138]  But the fourth factor again cuts the other way: BLM's new policy has been in place for only one year, a relatively short time.  Thus, even though BLM has not, to date, acted in a manner contrary to the position set forth in the errata sheet, the recency of this new policy also renders the fifth factor less significant here.[139]

Taken together, the *Rosebrock* factors counsel against finding this case moot because they support a reasonable expectation that BLM might change its position again.  Several additional factors bolster this conclusion.  The first is the fact that in 2020 (and again in 2022 in the DNA), BLM took the position that the 2020 EIS satisfies its NEPA obligations for future lease sales at least through 2039; another administration sometime in the next 20 or so years might agree with that

---

the 2012 EIS, they could have argued that NEPA required consideration of a reasonable alternative authorization of multiple lease sales that employed particular criteria regarding how many and which tracts to offer when.").

[138] Docket 71 at 4 n.2, 5.

[139] Moreover, insofar as Federal Defendants and the State contend that it is unlikely that BLM will retake the position that the 2020 EIS fully satisfies its NEPA obligations for future lease sales because it is unlikely a future lease sale will even occur, the Court disagrees.  BLM's decision to continue management under the 2013 IAP/ROD is part of its statutory obligation to conduct an "expeditious program of competitive leasing" in the NPR-A.  42 U.S.C. § 6506a(a); *NAEC*, 983 F.3d at 1081–82; *see also* Docket 63 at 9, 11–12, ¶¶ 24, 26, 34.  Although BLM has not yet offered a lease sale since the 2022 IAP/ROD, Plaintiffs allege that BLM held annual lease sales between 2013 and 2019, and that "[s]ome leaseholders have expressed plans to expand their oil and gas infrastructure westward."  Docket 63 at 12, ¶ 36.  These alleged facts plausibly show that lease sales will continue under the 2022 IAP/ROD.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 30 of 37

earlier position. The second is BLM's alleged failure to explain the reason for its reversal in position.[140] And the third is the apparent ease with which BLM could abandon or alter its new position if it so chose. Although the Court presumes BLM acted in good faith in issuing the errata sheet,[141] there appear to be few—if any— procedural safeguards insulating the agency's new position from arbitrary reversal.[142] Federal Defendants' references to unspecified procedural requirements in their briefing do not meaningfully define the contours of any such requirements that would apply to a future reversal. BLM's apparent failure to engage in any public process before issuing the errata sheet casts further doubt on the applicability of specific, mandatory procedures.[143] Relatedly, Federal

---

[140] *See* Docket 70 at 8; Docket 65-2 at 1–2; *see also Fikre*, 904 F.3d at 1039. Federal Defendants' briefing suggests that the reversal was prompted by agreement with Plaintiffs that the 2020 EIS does not provide adequate NEPA analysis for future NPR-A lease sales. *See* Docket 65 at 10. But because this rationale is not provided in the available record, the Court declines to give it significant weight. *Cf. F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (stating that an agency that changes a policy must provide a "reasoned explanation" for the change if the new policy relies on factual findings that contradict those that justified the prior policy, or if the prior policy "has engendered serious reliance interests"); *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1164–65 (9th Cir. 1998) (explaining that, when reviewing agency action under the APA, courts may not rely upon "post hoc" rationalizations for agency action (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971))).

[141] The Court further recognizes Federal Defendants' good faith efforts to resolve the claims in this case by "issu[ing] a [new] ROD that reinstated key aspects of the 2013 ROD supported by Plaintiffs." Docket 71 at 5.

[142] *See Fikre*, 904 F.3d at 1039.

[143] *See* Docket 70 at 7–8; *Bell v. City of Boise*, 709 F.3d 890, 900–01 (9th Cir. 2013) (ruling that plaintiffs' claims were not mooted by the issuance of an internal police department policy because the chief of police could "easily . . . abandon[] or alter[]" the policy in the future, even if the chief had no current intentions to do so); *Sackett v. E.P.A.*, 8 F.4th 1075, 1083 (9th Cir. 2021) (holding that plaintiffs' claims were not mooted by the agency's decision to withdraw a compliance order because the agency "could potentially change positions under new leadership"), *rev'd on other grounds*, 598 U.S. 651 (2023). Federal Defendants contend that *Bell* and *Sackett* are distinct from this case because they do not involve the "issu[ance] [of] formal new actions that supersede those challenged and resolve [the] alleged injury." *See*

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 31 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 31 of 37

Defendants cite no pertinent authority that persuades the Court that any such procedures would apply. Their only proffered authority, an unreported case from the District of Oregon, describes the procedures that would be required if an agency withdrew a timber project and later sought to propose and "authorize a new project in the [same] area."[144] That case does not support the notion that those procedures would apply here if BLM changed its position on the sufficiency of the 2020 EIS to support future lease sales in the NPR-A.

The Court similarly disagrees with Federal Defendants' portrayal of the errata sheet as a formal means to adopt its new position regarding the use of the 2020 EIS to support future lease sales. Federal Defendants rely primarily on two cases to support this characterization: *American Diabetes Ass'n v. U.S. Department of the Army*[145] and *Sitton v. Native Village of Northway*.[146] But BLM's publication of the errata sheet without notice and comment contrasts sharply with the regulatory revision that "enshrined" a policy change in *American Diabetes Ass'n*.[147] The errata sheet is also far less formal than the tribal court order at issue

---

Docket 71 at 7. However, the Court views BLM's policy change effected through the errata sheet as sharing the informality and impermanence that were hallmarks of the government policy changes in *Bell* and *Sackett*.

[144] See *League of Wilderness Defs.*, 2006 WL 3692535, at *4.

[145] 938 F.3d 1147 (9th Cir. 2019).

[146] Case No. A03-0134-CV (HRH), 2005 WL 2704992 (D. Alaska Oct. 13, 2005).

[147] *Am. Diabetes Ass'n*, 938 F.3d at 1153.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al*.
Order re Motions to Dismiss
Page 32 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 32 of 37

in *Sitton*; that order served as the means for changing the tribal court's initial position that it had jurisdiction over a custody dispute involving a minor child.[148]

Therefore, Federal Defendants have not met their burden of showing that BLM's change in position as reflected in its errata sheet is sufficiently permanent to moot this case. Moreover, in light of the considerations just discussed, effective relief is still available to Plaintiffs.[149] As Plaintiffs observe, BLM could resolve their concerns by committing to following certain procedures in the future, such as issuing a new notice of availability of the 2020 EIS before revising or relying on it as the sole NEPA analysis for a future lease sale.[150] This would "reset[] the clock for judicial review" under the NPRPA's statute of limitations, which would in turn "lessen the impact of [any] reversal [of position] on Plaintiffs' ability to challenge the EIS's adequacy for future [lease] sales."[151] Consequently, the Court finds that this case is not moot.

## II.    NPRPA's Statute of Limitations

"An otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading."[152] Pursuant to Federal

---

[148] *See Sitton*, 2005 WL 2704992, at *1, *5.

[149] *See Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988) ("[I]n deciding a mootness issue, . . . [t]he question is whether there can be *any* effective relief." (emphasis in original) (quoting *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir. 1986))).

[150] Docket 63 at 4, ¶ 8; Docket 70 at 10 n.3.

[151] *See* Docket 70 at 10 n.3.

[152] *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 33 of 37

Rule of Civil Procedure 15(c)(1)(B), a claim initially set forth in an amended complaint relates back to the date of a prior filing if the claim "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."[153]  "An amended claim arises out of the same conduct, transaction, or occurrence if it will likely be proved by the same kind of evidence offered in support of the original pleading."[154]  Additionally, to relate back, both the original complaint and the amended complaint must share "a common core of operative facts" in order to afford the defendant "fair notice of the transaction, occurrence, or conduct called into question."[155]  Nevertheless, the relation back doctrine is "liberally applied."[156]

The State contends that the NPRPA's statute of limitations bars Plaintiffs' current claims and that these claims do not relate back to the date of the initial complaint's filing.[157]  The State observes that Plaintiffs' initial and first amended complaints challenged the 2020 IAP/ROD, but the Second Amended Complaint includes a new challenge to a distinct final agency action: the 2022 IAP/ROD.[158]  Because the Second Amended Complaint "arises out of the 2022 [IAP/]ROD," the

---

[153] *Id.* (alteration in original).

[154] *Id.* (internal quotation marks omitted) (quoting *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988)).

[155] *Id.* (quoting *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989)).

[156] *Id.* at 1005 (explaining that Rule 15's purpose "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities" (quoting 6 Charles A. Wright et al., *Federal Practice and Procedure* § 1471 (3d ed. 1998))).

[157] Docket 66 at 13–18.

[158] Docket 66 at 15–16.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al*.
Order re Motions to Dismiss
Page 34 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 34 of 37

State maintains that Plaintiffs' amended claims do not arise out of the same "conduct, transaction, or occurrence" identified in the initial complaint and are thus untimely.[159]

However, Plaintiffs' current claims do relate back because, like the claims in their initial complaint, they involve the adequacy of the 2020 EIS to support future lease sales.[160] Crucially, Plaintiffs do not challenge the adequacy of the NEPA analysis to support the 2022 IAP/ROD to the extent that decision is solely programmatic in nature. Plaintiffs instead take issue with the adequacy of the 2020 EIS's analysis with respect to decisions made "at the site-specific level," that is, future lease sales.[161] Specifically, Plaintiffs allege that the range of alternatives contemplated in the 2020 EIS fails to include different leasing configurations or explain "how BLM will decide whether, when, or where to offer tracts for sale."[162] Although Plaintiffs' request for relief includes partially vacating the 2022 IAP/ROD, they limit this requested remedy "to the extent the [ROD] authorizes future lease sales without additional NEPA analysis."[163] At the heart of this request is the allegedly defective applicability of the 2020 EIS to future lease sales, not Federal Defendants' decision to select the no-action alternative in 2022. Plaintiffs raised

---

[159] Docket 66 at 14–16 (quoting Fed. R. Civ. P. 15(c)(1)(B)).

[160] *Compare* Docket 1 at 3, 20–21, ¶¶ 4, 54–58, *with* Docket 63 at 19–24, ¶¶ 72–91, A–C.

[161] *See* Docket 63 at 20–21, ¶ 78.

[162] Docket 63 at 20–21, ¶¶ 78–80.

[163] *See* Docket 63 at 24, ¶ C; Docket 70 at 15–16.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 35 of 37

this challenge in their initial complaint; therefore, the claims raised in their Second Amended Complaint relate back.

Since Plaintiffs' current claims relate back to their initial complaint, the fact that the Second Amended Complaint was filed more than 60 days after BLM issued the 2022 IAP/ROD and the errata sheet to the 2020 EIS does not bar these claims from proceeding.

## III. Whether an EIS Was Required

Finally, the State asserts that the Court should dismiss Plaintiffs' claims because "no EIS was required for Interior to continue management of the NPR-A under the 2013 IAP[/ROD]."[164]  The State reasons that BLM's selection of the no-action alternative in the 2022 IAP/ROD effectively maintained the status quo and therefore does not constitute a major federal action triggering NEPA.[165]  As a result, the State maintains, the Court "need not consider whether the EIS that was prepared satisfied NEPA."[166]

---

[164] Docket 66 at 6.

[165] Docket 66 at 4–6.  In support, the State cites *Burbank Anti-Noise Group v. Goldschmidt*, 623 F.2d 115 (9th Cir. 1980).  In that case, the Ninth Circuit held that no EIS was necessary because "the proposed federal action w[ould] effect no change in the status quo."  *Burbank Anti-Noise Grp.*, 623 F.2d at 116 (citation omitted).  The court therefore declined to consider "whether the EIS actually prepared . . . was adequate."  *Id.*; *cf. Andrus v. Sierra Club*, 442 U.S. 347, 362–63 (1979) (observing that when an "agency program [is] . . . revised in a manner that constitute[s] major federal action significantly affecting the quality of human environment, an EIS [must] . . . accompany the underlying programmatic decision").

[166] Docket 66 at 6.

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 36 of 37

The State's argument relies on the incorrect premise that Plaintiffs dispute Federal Defendants' compliance with NEPA in choosing to continue managing the NPR-A under the 2013 IAP/ROD. Plaintiffs challenge the 2022 IAP/ROD to the extent it adopts the 2020 EIS's analysis to authorize future lease sales without additional NEPA analysis. But Plaintiffs do not challenge the 2022 IAP/ROD based on the decision to select the no-action alternative. The Court therefore finds that any failure of the 2022 IAP/ROD to trigger NEPA due to its selection of the no-action alternative does not render Plaintiffs' claims to be without merit.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Federal Defendants' Motion to Dismiss at Docket 65 and the State's Motion to Dismiss at Docket 66 are each DENIED. Federal Defendants and the State shall file answers to the Second Amended Complaint within 14 days of the date of this order.[167]

DATED this 14th day of September 2023.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[167] *See* Fed. R. Civ. P. 12(a)(4)(A).

Case No. 3:20-cv-00206-SLG, *National Audubon Society, et al. v. Haaland, et al.*
Order re Motions to Dismiss
Page 37 of 37

Case 3:20-cv-00206-SLG   Document 73   Filed 09/14/23   Page 37 of 37